No. 13-1220

_____

IN THE

# UNITED STATES COURT OF APPEALS

**FOR THE FOURTH CIRCUIT**

_____

CONSOL OF KENTUCKY, INCORPORATED,

*Petitioner,*

v.

ORA ATWELL

And,

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

*Respondents.*

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW
BOARD, UNITED STATES DEPARTMENT OF LABOR
(12-0151-BLA)

_____

**RESPONSE BRIEF OF ORA ATWELL**
_____

Joseph E. Wolfe
Ryan C. Gilligan
WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS
470 Park Avenue
P.O. Box 625
Norton, Virginia 24273
Telephone: (276) 679-0777

*Counsel for Ora Atwell*                    **January 28, 2014**

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____ who is _____, makes the following disclosure:
  (name of party/amicus)          (appellant/appellee/amicus)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   YES   NO

2.     Does party/amicus have any parent corporations?   YES   NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   YES   NO
       If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   YES   NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   YES   NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?   YES   NO
       If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____         _____
      (signature)                                (date)

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . 17

    II.   THE ALJ DID NOT IMPROPERLY RESTRICT CONSOL'S ABILITY
         TO REBUT THE 15-YEAR PRESUMPTION . . . . . . . . . 18

         A. Operators can only rebut the 15-year presumption
            through the two methods at Section 921(c)(4) . . . 20

         B. The Director's regulation addressing the methods of
            rebuttal under Section 921(c)(4) is entitled to
            *Chevron* deference . . . . . . . . . . . . . . . 27

    III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION
         THAT CONSOL FAILED TO REBUT THE 15-YEAR PRESUMPTION 31

         A. Dr. Hippensteel's opinion is poorly reasoned, and
            contrary to the regulatory definition of
            pneumoconiosis . . . . . . . . . . . . . . . . . 32

         B. Dr. Rosenberg's explanation for the cause of
            Atwell's obstructive impairment conflicts with the
            Department of Labor's findings in the preamble . 39

         C. The ALJ's weighing of the medical opinions of Drs.
            Habre and Al-Khasawaneh does not assist Consol in
            rebutting the 15-year presumption . . . . . . . 45

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 47

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . 48

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

I

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. Director, OWCP*,
886 F.2d 818 (6th Cir. 1989). . . . . . . . . . . . . . . . . . 44

*Ansel v. Weinberger*,
529 F.2d 304 (6th Cir. 1976). . . . . . . . . . . . . . 21, 22

*Barber v. Director, OWCP, U.S. Dept. of Labor*,
43 F.3d 899 (4th Cir. 1995) . . . . . . . . . . . . . . 23, 24

*Barker v. Cumberland Resources Corp.*,
BRB No. 11-0406 BLA, 2012 WL 1391712 (DOL Ben. Rev. Bd. Mar. 8, 2012)(unpub). . . . . . . . . . . . . . . . . . . . . . . . . 40

*Big Branch Res. Inc. v. Ogle*,
737 F.3d 1063, 2013 U.S. App. LEXIS 24932 (6th Cir. 2013)
. . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21, 27

*Blakley v. Amax Coal Co.*,
54 F.3d 1313 (7th Cir. 1995). . . . . . . . . . . . . . 18, 19

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) . . . . . . . . . . . . . . 20, 27, 28, 29

*Colley & Colley Coal Co. v. Breeding*,
59 Fed.Appx. 563 (4th Cir. 2003). . . . . . . . . . . . . . 26

*Consol. Edison Co. of New York v. N.L.R.B.*,
305 U.S. 197 (1938) . . . . . . . . . . . . . . . . . . . . 32

*Consolidation Coal Co. v. Chubb*,
741 F.2d 968 (7th Cir. 1984) . . . . . . . . . . . . . . . . 2

*Consolidation Coal Co. v. Director, OWCP*,
721 F.3d 789 (7th Cir. 2013). . . . . . . . . . . . . . . . 13

*Consolidation Coal Co. v. Director, OWCP[Beeler]*,
521 F.3d 723 (7th Cir. 2008). . . . . . . . . . . . . . . . 43

*Consolidation Coal Co. v. Swiger*,
98 Fed.Appx. 227 (4th Cir. 2004). . . . . . . . . . . . . . 36

*Craig v. Chater*,
76 F.3d 585 (4th Cir. 1996) . . . . . . . . . . . . . . . . 17

II

*Dante Coal Co. v. Director, OWCP*,
164 Fed. Appx. 338 (4th Cir. 2006). . . . . . . . . . . . . . 34

*Dayton v. Consolidation Coal Co.*,
953 F.2d 637 (4th Cir. 1992). . . . . . . . . . . . . . . . . 32

*Doss v. Director, OWCP*,
53 F.3d 654 (4th Cir. 1995) . . . . . . . . . . . . . . 17, 28

*Greene v. King James Coal Min., Inc.*,
575 F.3d 628 (6th Cir. 2009). . . . . . . . . . . . . . . . . 33

*Harman Mining Co. v. Director, OWCP[Looney]*,
678 F.3d 305 (4th Cir. 2012). . . . . . . . . . . . . . . . . 42

*Hobbs v. Clinchfield Coal Co.*,
917 F.2d 790 (4th Cir. 1990). . . . . . . . . . . . . . . . . 23

*Huff v. J.H. Fletcher & Co.*,
1997 U.S. App. LEXIS 11108 (4th Cir. 1997) . . . . . . . . . 8

*Lambert v. Director, OWCP*,
810 F.2d 201, 1986 U.S. App. LEXIS 33084 (6th Cir. 1986). . . 11

*Lewis Coal Co. v. Director, OWCP*,
373 F.3d 570 (4th Cir. 2004). . . . . . . . . . . . . . . . . 35

*M.A. v. Jones Fork Operation*,
BRB No. 08-0308 BLA, 2009 WL 346633 (DOL Ben. Rev. Bd. Jan 16,
2009)(unpub.) . . . . . . . . . . . . . . . . . . . . . . . . 40

*Midland Coal Co. v. Director, OWCP[Shores]*,
358 F.3d 486 (7th Cir. 2004). . . . . . . . . . . . . . 33, 34

*Milburn Colliery Co. v. Hicks*,
138 F.3d 524 (4th Cir. 1998). . . . . . . . . . . . 17, 38, 39

*Miller v. McCoy Caney Coal Co.*,
BRB No. 12-0391 BLA, 2013 WL 1400890 (DOL Ben. Rev. Bd. Mar. 28,
2013)(unpub.) . . . . . . . . . . . . . . . . . . . . . . . . 40

*Mingo Logan Coal Co. v. Owens*,
724 F.3d 550 (4th Cir. 2013). . . . . . . 18, 20, 21, 22, 25, 26

*Morrison v. Tennessee Consolidated Coal Co.*,
644 F.3d 473 (6th Cir. 2011) . . . . . . . . . . . . . . .18, 19

*Mullins Coal Co. v. Director, OWCP*,
484 U.S. 135 (1987) . . . . . . . . . . . . . . . . . . 35

*Nat'l Cable and Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) . . . . . . . . . . . . . . . . 28, 29

*Nat's Mining Ass'n v. Dep't of Labor*,
292 F.3d 849 (DC Cir. 2002) . . . . . . . . . . . . . 42

*Pennington v. Evans Coal Corp.*,
BRB No. 12-0497 BLA, 2013 WL 4407007 (DOL Ben. Rev. Bd. July 17,
2013)(unpub.) . . . . . . . . . . . . . . . . . . . . 40

*Petry v. Califano*,
577 F.2d 860 (4th Cir. 1978) . . . . . . . . . . . 21, 22

*Rose v. Clinchfield Coal Co.*,
614 F.2d 936 (4th Cir. 1980) . . . . . . . . . . . 26, 27

*Shuck v. Consolidation Coal Co.*,
7 Fed.Appx. 168 (4th Cir. 2001) . . . . . . . . . . . 17

*Taylor v. Manalapan Mining Co.*,
BRB No. 10-0403 BLA, 2011 WL 1451817 (Ben. Rev. Bd. Mar. 11,
2011)(unpub.) . . . . . . . . . . . . . . . . . . . . 40

*Toler v. Eastern Associated Coal Co.*,
43 F.3d 109 (4th Cir. 1995) . . . . . . . . . . . . . 44

*Underhill v. Peabody Coal Co.*,
687 F.2d 217 (7th Cir. 1982) . . . . . . . . . . . . 23

*United States v. Home Concrete & Supply, LLC*,
132 S.Ct. 1836 (2012) . . . . . . . . . . . . . . 28, 29

*Usery v. Turner Elkhorn Mining Co.*,
428 U.S. 1 (1976) . . . . . . . . . . . . . . . . *passim*

*Underwood v. Elkay Mining, Inc.*,
105 F.3d 946 (4th Cir. 1997) . . . . . . . . . . . . 32

*Vision Processing, LLC v. Groves*,
705 F.3d 551 (6th Cir. 2013) . . . . . . . . . . . . 18

*Warth v. S. Ohio Coal Co.*,
60 F.3d 173 (4th Cir. 1995) . . . . . . . . . . . . . 41

IV

*Westmoreland Coal Co., Inc. v. Cochran*,
718 F.3d 319 (4th Cir. 2013). . . . . . . . . . . . . 17

*Yogi Mining Co. v. Fife*,
159 Fed.Appx. 441 (4th Cir. 2005) . . . . . . . . . . . . 32

**STATUTES**

Black Lung Benefits Act
30 U.S.C. §§901-944

     30 U.S.C. §921(c)(4)(1972) . . . . . . . . . . . . . 22

     30 U.S.C. §902(b)(1976). . . . . . . . . . . . . . 23

     30 U.S.C. §902(b)(1978). . . . . . . . . . . . . . 23

     30 U.S.C. §§901-44. . . . . . . . . . . . . . . . 1

     30 U.S.C. §901 . . . . . . . . . . . . . . . . . 27

     30 U.S.C. §902 . . . . . . . . . . . . . . . . . 23

     30 U.S.C. §902(b). . . . . . . . . . . . . . . . 24

     30 U.S.C. §921(c)(4) . . . . . . . . . . . . . . *passim*

     30 U.S.C. §932(a). . . . . . . . . . . . . . . . 1, 2

     30 U.S.C. §932(l). . . . . . . . . . . . . . . . 18

**Longshore and Harbor Workers' Compensation Act
33 U.S.C. §§ 901-950**

     33 U.S.C. § 921(c) . . . . . . . . . . . . . . . 1, 2

**Patient Protection and Affordable Care Act,
Pub. L. No. 111-148, 124 Stat. 119 (2010)**

     § 1556. . . . . . . . . . . . . . . . . . . . 1, 18

     § 1556(c) . . . . . . . . . . . . . . . . . . . 1

v

**REGULATIONS**

Title 20, Code of Federal Regulations

20 C.F.R. § 727.203(2000). . . . . . . . . . . . . . 26

20 C.F.R. § 718.305(2012). . . . . . . . . . . . . . 27

20 C.F.R. § 718.305(a)(2012) . . . . . . . . . . . . 29

20 C.F.R. § 718.201. . . . . . . . . . . . 23, 24, 26

20 C.F.R. § 718.201(a)(1) . . . . . . . . . . . . . . 5

20 C.F.R. § 718.201(a)(2) . . . . . . . . . . . . 5, 24

20 C.F.R. § 718.201(c) . . . . . . . . . . . . . . . 35

20 C.F.R. § 718.204(b)(2)(i)(C). . . . . . . . . . . 41

20 C.F.R. § 718.305 . . . . . . . . . . . 4, 14, 19, 21

20 C.F.R. § 718.305(d) . . . . . . . . . . . . 21, 26

20 C.F.R. § 725.202(d)(2). . . . . . . . . . . . . . 18

**Regulations Implementing the Byrd Amendments to the BLBA: Determining Coal Miners' and Survivors' Entitlement to Benefits**

78 Fed. Reg. 59102 . . . . . . . . . . . . . . 19, 29

78 Fed. Reg. 59106 . . . . . . . . . . . . . . . . 29

78 Fed. Reg. 59114 . . . . . . . . . . . . . . . . 19

**Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended**

65 Fed. Reg. 79,940. . . . . . . . . . . . . . . . 34

65 Fed. Reg. 79,943. . . . . . . . . . . . . . 34, 41

**LEGISLATIVE MATERIALS**

Sen. Rep. No. 92-743 (1972) 92nd Cong. 2d. Sess.
*reprinted in* 1972 U.S.Con. & Admin. News at 2306 . . . . 22

**OTHER AUTHORITIES**

Criteria for a Recommended Standard, Occupational Exposure
to Respiratory Coal Mine Dust, National Institute for
Occupational Safety and Health (1995). . . . . . . . . . 41

## JURISDICTIONAL STATEMENT

This appeal arises from a Decision and Order issued by the Benefits Review Board ("Benefits Review Board" or "the Board"), United States Department of Labor, under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, most commonly known as the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§901-44.[1]  This Court has authority to review decisions issued by the Benefits Review Board pursuant to 33 U.S.C. §921(c), as incorporated by Section 422(a) of the BLBA, 30 U.S.C. §932(a).

The Benefits Review Board issued a Decision and Order on the 21st of December, 2012, affirming the Decision and Order Awarding Benefits issued by the Administrative Law Judge ("ALJ"). *Joint Appendix* ("*J.A.*") 49-57.  Consol of Kentucky ("Consol") filed a Petition for Review with the Fourth Circuit Court of Appeals on the 19th of February, 2013. *J.A.* 58-63.  Mr. Ora Atwell ("Atwell") last worked as a coal miner in the Commonwealth of Kentucky, but the vast majority of Atwell's employment occurred in West Virginia. *J.A.* 5, 51.  This Court has discretion to exercise jurisdiction over Consol's appeal.[2]

---

[1] The BLBA has been recently amended by Section 1556 of the Patient Protection and Affordable Care Act("ACA"). Pub. L. No. 111-148, §1556 (2010).  These amendments specifically apply to claims filed after the 1st of January, 2005. Pub. L. No. 111-148, §1556(c) (2010).

[2] Notably, the adjudicators below found this case governed by the laws of the Sixth Circuit Court of Appeals. *See J.A.* 40, 51.  (Continued)

*See* 33 U.S.C. § 921(c); 30 U.S.C. § 932(a); *Consolidation Coal Co. Chubb*, 741 F.2d 968, 971 (7th Cir. 1984).

---

Consol never contested the jurisdiction of this claim below, and does not address why it has elected to seek review from this Court, rather than the Sixth Circuit.

## ISSUES PRESENTED

1. Whether the ALJ erred by holding Consol to the two methods of rebuttal at 30 U.S.C. § 921(c)(4).

2. Whether the ALJ's weighing of the conflicting medical opinion evidence is rational, supported by substantial evidence, and in accordance with controlling law.

**STATEMENT OF THE CASE**

Atwell filed this subsequent claim for Federal black lung benefits on the 3rd of November, 2008. *J.A.* 1-4. The District Director found Atwell entitled to benefits, and issued a Proposed Decision and Order Awarding Benefits on the 18th of June, 2009. *J.A.* 30. *See also Director's Exhibits* ("*Dir. Ex.*") 25. Consol subsequently appealed the District Director's findings to the Office of Administrative Law Judges. *Id. See also Dir. Ex.* 26. A formal hearing took place on the 11th of January, 2011 in Beckley, West Virginia before the Honorable Judge Michael P. Lesniak. *J.A.* 8-28. Judge Lesniak would find Atwell entitled to benefits by Decision and Order issued on the 8th of November, 2011. *J.A.* 29-48.

Judge Lesniak credited Atwell with twenty-six (26) years of underground coal mine employment, and found the pulmonary function testing and medical opinion evidence establishes that Atwell suffers from a disabling respiratory impairment. *J.A.* 31, 38-39. As a result of these findings, the Administrative Law Judge ("ALJ") found Atwell entitled to the 15-year rebuttable presumption at 30 U.S.C. § 921(c)(4), as incorporated into the regulations at 20 C.F.R. § 718.305. *J.A.* 40.

Judge Lesniak found Consol successfully rebutted the presumption of clinical coal workers' pneumoconiosis after

4

weighing the chest x-ray, CT scan, and medical opinion evidence.[3]
*J.A.* 42-43.    However, the judge would find Consol failed to
rebut the presumption of legal pneumoconiosis. *J.A.* 43-44.
The ALJ rejected Dr. Hippensteel's opinion as "inconsistent with
the plain language of the Regulations, which recognize
pneumoconiosis as being a latent and progressive disease."[4] *J.A.*
43.    The judge rejected Dr. Rosenberg's opinion as "inconsistent
with the preamble to the Regulations." *J.A.* 44.    The opinions of
Atwell's four experts did not assist Consol in meeting its
burden of rebuttal, as each found coal dust to contribute to
Atwell's respiratory impairment. *J.A.* 43.

The ALJ would also reject the disability causation opinions
of Consol's experts as inconsistent with the regulations, and
contrary to his weighing of the evidence on the issue of legal
pneumoconiosis. *J.A.* 36-38.    Specifically, the ALJ found Dr.
Hippensteel's opinion poorly reasoned because it is silent as to
why coal dust exposure did not contribute to the "irreversible
component of [Atwell's] impairment," which still existed after
the administration of bronchodilators. *J.A.* 41.    The judge
rejected Dr. Rosenberg's opinion because it "is based on a

---

[3] "'Clinical pneumoconiosis' consists of those diseases recognized by the
medical community as pneumoconiosis, *i.e.*, the conditions characterized by
permanent deposition of substantial amounts of particulate matter in the
lungs and the fibrotic reaction of the lung tissue to that deposition caused
by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1).
[4] Legal pneumoconiosis "includes any chronic lung disease or impairment and its
sequelae arising out of coal mine employment.    This definition includes, but
is not limited to, any chronic restrictive or obstructive pulmonary disease
arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).

premise that is inconsistent with the Regulations and preamble."
*Id.* The ALJ found Atwell entitled to benefits based on Consol's
failure to rebut the 15-year presumption. *J.A.* 44-45.

Consol appealed, and the Benefits Review Board affirmed the
ALJ's analysis by Decision and Order issued on the 21st of
December, 2012. *J.A.* 49-57. The Board affirmed, as
unchallenged, the judge's determination that Atwell spent
twenty-six (26) years employed as a coal miner, and suffers from
a totally disabling respiratory impairment. *J.A.* 51. The court
rejected Consol's challenges to the constitutionality of the ACA
amendments to the BLBA, and affirmed the ALJ's invocation of the
rebuttable presumption. *J.A.* 51-52. The Board found Judge
Lesniak "rationally" afforded reduced weight to Dr.
Hippensteel's opinion as inconsistent with the regulatory
definition of coal workers' pneumoconiosis, which "is recognized
as a latent and progressive disease." *J.A.* 54. The court found
the ALJ acted within his discretion in rejecting Dr.
Hippensteel's disability causation opinion because the physician
"failed to adequately explain why coal dust exposure could not
be a contributing cause of the irreversible component of
[Atwell's] disabling impairment." *Id.* Finally, the court
affirmed the ALJ's weighing of Dr. Rosenberg's opinion as
contrary to the "scientific studies approved by DOL in the
preamble to the amended regulations." *J.A.* 55. The Board found

6

the ALJ "acted within his discretion in finding that Dr. Rosenberg's opinion was not well reasoned, and merited little weight." *Id.* Ultimately, the court affirmed the ALJ's determination that Consol failed to rebut the 15-year presumption.

This appeal followed.

## STATEMENT OF THE FACTS

Consol does not dispute Atwell suffers from a totally disabling respiratory impairment. *Opening Brief of Petitioner* ("*Pet.*") 4. Instead, Consol disputes the ALJ's determination that it failed to rebut the presumption that Atwell suffers from legal pneumoconiosis, and that coal dust exposure caused or contributed to his impairment. *Id.* As such, Atwell's discussion of the facts will be limited only to the issues presented on this appeal.

Atwell is a retired coal miner who spent twenty-six (26) years working in the Nation's underground coal mines where he spent the majority of his career as a roof bolter.[5] *J.A.* 21, 31. He also has a twenty (20) to thirty (30) year history of smoking cigarettes at a rate of one-half to one and one-half packs of cigarettes per day. *J.A.* 25, 31. Dr. Anthony Rossi provides treatment for Atwell, and these records document Atwell's chronic obstructive pulmonary disease (COPD), and frequent complaints of coughing, and shortness of breath on exertion. *J.A.* 88-103. Atwell also receives treatment from Dr. Antoine Habre who noted Atwell's treatment with supplemental oxygen in June, 2010. *J.A.* 167. Dr. Habre found Atwell to suffer from

---

[5] "A roof bolter drills holes in the top of the mine shaft. Bolts are then inserted to prevent the roof of the shaft from collapsing while the miners get at the coal." *Huff v. J.H. Fletcher & Co.*, 1997 U.S.App. LEXIS 11108, *1-2 (4th Cir., 1997).

lung disease due to smoking and coal dust exposure, and recommended he "avoid coal dust, fume, chemicals or any other respiratory hazards." *J.A.* 168.

Pursuant to a Department of Labor sponsored examination, Dr. Anil Agarwal examined Atwell on the 29th of January, 2009. *J.A.* 104-107. This exam included a chest x-ray, pulmonary function testing, blood gas testing, electrocardiogram, and a social and occupational history. *Id.* Based on this testing, Dr. Agarwal diagnosed Atwell with clinical and legal pneumoconiosis along with a "severe obstructive ventilatory defect," which renders Atwell totally disabled. *J.A.* 107. The physician found Atwell's impairment is caused by legal pneumoconiosis with a "substantial contribution from clinical pneumoconiosis." *Id.*

Dr. Kirk Hippensteel examined Atwell and diagnosed a severe obstructive impairment with chronic bronchitis, exercise induced hypoxemia, and heart disease caused by cigarette smoking. *J.A.* 116-122. He did not find Atwell to suffer from emphysema because he found no evidence of a "persistent diffusion impairment." *J.A.* 120. Dr. Hippensteel excluded coal dust exposure as a cause of Atwell's chronic bronchitis "since industrial bronchitis from coal mine dust exposure usually subsides within a period of several months after leaving work in the mines and this man stopped working in August 2000." *J.A.* 120. The physician felt Atwell's exercise induced blood gas

impairment "is likely related to his heart" and not coal dust exposure because he found no permanent impairment in diffusion. *Id.*

The physician conceded coal dust exposure can cause obstructive impairments, but felt it is more common for coal dust to cause a mixed restrictive and obstructive impairment. *J.A.* 160-61. He again diagnosed chronic bronchitis in a supplemental opinion due solely to smoking, and noted "[Atwell] has a purely obstructive impairment, without any restrictive impairment from interstitial fibrosis." *J.A.* 175. In his final opinion, Dr. Hippensteel diagnosed:

> chronic bronchitis that is not compatible with industrial bronchitis from [Atwell's] distant coal mine dust exposure. He does not have any restrictive disease or diffusion impairment referable to interstitial fibrosis from his prior coal mine dust exposure. His partially reversible obstructive lung disease is not compatible with the fixed and irreversible obstruction expected from coal mine dust exposure but is compatible with chronic bronchitis as a disease of the general public.

*J.A.* 224.

After conducting a comprehensive pulmonary evaluation, Dr. Rasmussen found Atwell to suffer from a totally disabling obstructive impairment caused by smoking and coal dust exposure. *J.A.* 127-130. The physician averred, "[c]oal mine dust and cigarette smoke cause most types of emphysema," and the mechanisms by which these two agents cause lung damage are

"essentially identical." *J.A.* 129.   The physician noted that smoking and coal dust cause "significant lung disease" in only a "distinct minority" of individuals heavily exposed. *Id.*  Relying on medical literature, Dr. Rasmussen concluded, "both smoking and mine dust are significant contributing factors" to Atwell's disabling impairment. *Id.*

Following a review of medical records, Dr. Rosenberg found Atwell to suffer from a disabling obstructive impairment with a reduced diffusing capacity caused by smoking.  *J.A.* 134-143, 182-221, 226-234.  The physician based his opinion upon a belief that COPD does not always manifest in a reduction in FEV1 and the FEV1/FVC. *J.A.* 139-40.  Rather, fifteen (15) percent of patients with COPD suffer from an impairment manifested by a parallel reduction in both the FEV1 and FEV1/FVC.[6] *Id.*   Dr. Rosenberg believes coal dust exposure "generally" causes this parallel reduction, whereas smoking causes a reduction in the FEV1 and FEV1/FVC ratio as found in Atwell. *J.A.* 198-99.

The physician would agree coal dust exposure can cause emphysema, but "generally" this agent does not cause as much destruction as cigarette smoke, and therefore the "diffusing

---

[6] "FEV1 (forced expiratory volume in one second) is a measure of lung function.  The test results are a percentage of predicted values based on characteristics such as the subject's age, height, and gender." *Big Branch Res. Inc. v. Ogle*, 737 F.3d 1063, 2013 U.S. App. LEXIS 24932, *6 n.2 (6th Cir. 2013).  "The forced vital capacity, of FVC is the vital capacity performed with expiration as forceful and rapid as possible." *Lambert v. Director, OWCP*, 810 F.2d 201, 1986 U.S. App. LEXIS 33084, *6 n.3 (6th Cir. 1986).

capacity generally would be preserved." *J.A.* 200. He also conceded coal dust can cause a reduced diffusing capacity, but found Atwell's reduced diffusing capacity to be more consistent with damage caused by smoking. *J.A.* 212-13. The rationale behind this conclusion is the physician's opinion that cigarette smoke causes a more "diffuse emphysematous destruction of lung tissue [which] is not characteristic of coal mine dust exposure." *J.A.* 230.

Dr. Khaled Al-Khasawneh conducted a comprehensive pulmonary evaluation and found Atwell to suffer from a "severe pulmonary impairment" manifested by an obstructive impairment on pulmonary function testing. *J.A.* 176-78. Dr. Al-Khasawneh would diagnose legal pneumoconiosis, but highlighted Atwell's "history of tobacco abuse." *J.A.* 177. The physician found both agents "contributed significantly" to Atwell's impairment, but "[i]t is medical impossible to differentiate how much coal dust versus smoking contributed to the obstruction." *Id.* Dr. Al-Khasawneh concluded that Atwell's "legal pneumoconiosis contributes substantially to his impairment." *J.A.* 178.

12

## SUMMARY OF THE ARGUMENT

It is undisputed Atwell is entitled to the 15-year presumption found at 30 U.S.C. § 921(c)(4). This presumption affords him a rebuttable presumption that he suffers from coal workers' pneumoconiosis, and coal dust caused his totally disabling respiratory impairment. Consol's argument on this appeal challenges the standard of rebuttal, and the ALJ's weighing of the conflicting evidence. Consol claims the ALJ erred in applying this presumption because the statutory methods of rebuttal do not apply to operators. It further challenges the ALJ's weighing of the medical opinion evidence, and offers a lengthy argument in support of its position that substantial evidence does not support this analysis. Consol's arguments should be rejected, as the ALJ applied the correct standard of rebuttal under the 15-year presumption, and substantial evidence supports his weighing of the conflicting evidence.

Consol relies on the Supreme Court's holding in *Usery v. Turner Elkhorn Mining Co.* 428 U.S. 1, 34-35 (1976) as authority establishing operators are not bound to the two methods of rebuttal contained at 30 U.S.C. § 921(c)(4). Since operators are not bound to the rebuttal limitations, Consol proposes this Court adopt a third method of rebuttal, which permits rebuttal by showing a miner's pneumoconiosis did not substantially contribute to his disabling impairment. Consol advocates

13

zealously for a third method of rebuttal, but its argument is quickly undermined by the fact this third method is inapplicable to this case because none of Consol's experts found Atwell to suffer from any form of pneumoconiosis.

Congress' 1977 amendments to the BLBA eliminated the third method of rebuttal permitted by *Usery*. These amendments expanded the definition of pneumoconiosis to include what is now known as legal pneumoconiosis. There are now only two methods to rebut the presumption at § 921(c)(4). The first method allows an operator to demonstrate that the miner does not suffer from clinical or legal pneumoconiosis. The second method permits the operator to rebut the presumption by demonstrating that the miner's disabling impairment is unrelated to coal dust exposure.

The substantially contributing cause standard proposed by Consol is in direct conflict with amended 20 C.F.R. § 718.305, which requires an operator to exclude coal dust as a cause of the miner's impairment. The Director's amended regulation is consistent with the post-*Usery* amendments to the BLBA, and the Congressional intent behind those amendments. This regulation is virtually identical its previous version, which this Court interpreted as requiring operators to rule-out coal dust as a cause of the miner's impairment. The Director's interpretation

14

of the methods of rebuttal under the 15-year presumption is entitled to deference.

Consol's challenge to the ALJ's weighing of the evidence presents a question of substantial evidence. The ALJ rationally found Dr. Hippensteel's opinion contrary to the regulatory definition of pneumoconiosis, because he failed to consider the latent and progressive nature of the disease. Furthermore, although the physician found an element of reversibility in Atwell's obstructive impairment, he never explained why coal dust did not cause this residual obstructive impairment.

The ALJ also rationally rejected Dr. Rosenberg's opinion on the cause of Atwell's obstructive impairment because the physician's reasoning conflicts with the Department of Labor's findings in the preamble. The Department of Labor has specifically found miners to be at an increased risk for developing Atwell's exact pattern of impairment. Consol claims Dr. Rosenberg does not dispute this fact, but the physician's opinion never addresses why this has not occurred in this case.

Finally, Consol's challenge to the ALJ's weighing of the opinions of Drs. Habre and Al-Khasawneh is merely a red herring. Both of these physicians offered opinions, which find Atwell's impairment to be caused in part, by coal dust exposure. Accordingly, Consol's argument provides no assistance for its belief that it has rebutted the 15-year presumption. Consol's

15

arguments on this appeal fail to show that the ALJ erred in his application of § 921(c)(4). Substantial evidence also supports the ALJ's determination that Consol failed to rebut this presumption. The ALJ's award of benefits should be affirmed.

## ARGUMENT

### I.    STANDARD OF REVIEW

Judicial review of agency decisions is only appropriate for mistakes of law, and to guarantee that the factual determinations are in adherence with statutory standards of review. *Doss v. Director, OWCP*, 53 F.3d 654, 658 (4th Cir. 1995). This Court reviews the legal findings of the ALJ and Benefits Review Board *de novo* to ensure "they are rational and consistent with applicable law." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). This Court "must affirm the decision of the Administrative Law Judge if it is in accordance with the law and supported by substantial evidence." *Id.* "A review for substantial evidence does not involve re-weighing conflicting evidence, making credibility determinations, or substituting judgment for that of the ALJ." *Shuck v. Consolidation Coal Co.*, 7 Fed.Appx. 168, 172 (4th Cir. 2001) *referencing Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). When a "claim reduces to a case of conflicting medical opinions, i.e., a 'battle of the experts' [i]t is the role of the ALJ – not the appellate court – to resolve that battle." *Westmoreland Coal Co., Inc. v. Cochran*, 718 F.3d 319 (4th Cir. 2013).

## II.  THE ALJ DID NOT IMPROPERLY RESTRICT CONSOL'S ABILITY TO REBUT THE 15-YEAR PRESUMPTION.

To be entitled benefits, a miner must establish the following elements: (1) the existence of pneumoconiosis; (2) that the pneumoconiosis arose out of coal mine employment; (3) the miner is totally disabled from a respiratory or pulmonary condition; and (4) pneumoconiosis contributes to the total disability. 20 C.F.R. § 725.202(d)(2).  Since its enactment in 1969, "Congress has repeatedly tinkered with the claim-filing process, sometimes making it harder for miners and survivors to obtain benefits, sometimes making it easier." *Vision Processing, LLC v. Groves*, 705 F,3d 551, 553 (6th Cir. 2013).  Congress' most recent amendments to the BLBA have eased the pathway to obtain benefits for certain miners and survivors by reviving the 15-year rebuttable presumption at 30 U.S.C. § 921(c)(4), and by reviving derivative entitlement at 30 U.S.C. § 932(*l*). Pub. L. No. 111-148, § 1556 (2010).

The 15-year presumption "presumptively satisfies claim elements (1)(the existence of pneumoconiosis), (2) (pneumoconiosis arose out of coal mine employment), and (4) (pneumoconiosis caused the total disability)." *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 555 (4th Cir. 2013).  Once the 15-year presumption is invoked, "the burden of production and persuasion lies on the employer, [] to rebut the presumption of

disability due to pneumoconiosis." *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011) *referencing* 30 U.S.C. § 921(c)(4) *and Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1320 (7th Cir. 1995). "It is no secret that the 15-year presumption is difficult to rebut." *Consolidation Coal Co. v. Director, OWCP*, 721 F.3d 789, 795 (7th Cir. 2013).

The award of benefits Atwell received in this claim stems from Consol's failure to surmount its burden of rebuttal under the 15-year presumption. *See J.A.* 40-45. Consol does not dispute Atwell's entitlement to this presumption. Instead Consol challenges the ALJ's analysis under this presumption believing the ALJ improperly restricted its methods of rebuttal, and also imposed an incorrect standard of proof. *Pet.* 11-19. Consol relies on the Supreme Court's decision in *Usery*, as authority for its position that operators are not limited to the methods of rebuttal provided by the statutory language of § 921(c)(4). *Id.* 12-14. Consol acknowledges the recent regulatory amendments implementing the 15-year presumption, but argues *Usery* still controls despite the subsequent Congressional amendments, which guided the Director in writing this new regulation. *Id.* 16-19. *See* 20 C.F.R. § 718.305(2013) *and Regulations Implementing the Byrd Amendments to the BLBA: Determining Coal Miners' and Survivors' Entitlement to Benefits*, 78 Fed. Reg. 59102, 59114 (Sept. 25, 2013).

19

Consol believes the ALJ denied it the third method of rebutting the 15-year presumption: "by showing a claimant's pneumoconiosis did not substantially contribute to his total disability." *Pet.* 15. However, there is no third method of rebuttal, and the proposed "substantially contributing cause standard" conflicts with the Director's amended regulations, and prior decisions of this Court. The Director's amended regulation accounts for the amendments to the BLBA which followed *Usery*, and is entitled to deference under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).

Even if a third method of rebuttal existed, it would be inapplicable to this case because even Consol agrees none of its experts diagnosed Atwell with <u>any</u> form of pneumoconiosis. *Pet.* 21, 33. Therefore, there is no merit to Consol's suggestion that the ALJ applied an overly restrictive application of the 15-year presumption.

A. <u>Operators can only rebut the 15-year presumption through the two methods at Section 921(c)(4).</u>

The Supreme Court in *Usery* found the "limited means of rebutting the 15-year presumption under § 921(c)(4) are not applicable to operators." *Pet.* 14. Pressing this Court to adopt this standard, Consol cites to Judge Niemeyer's concurring opinion in *Owens*, 724 F.3d at 560 (Nieymeyer, J., concurring), where he opined that operators could rebut the 15-year

20

presumption "by showing that the miner's pneumoconiosis was not a substantially contributing cause of his total disability." (emphasis in original). This Court must reject Consol's argument as it eludes meaningful discussion of the Supreme Court's holding in *Usery,* and the critical Congressional amendments that soon followed this decision. The Director's amended regulation at 20 C.F.R. § 718.305 specifically holds operators to the two methods of rebuttal found at § 921(c)(4). 20 C.F.R. § 718.305(d)(2013). This Court should adopt the standard of rebuttal set forth by the Director, which as found by the Sixth Circuit, requires an operator to "'rule-out' coal mine employment as a cause of the disability." *Ogle*, 737 F.3d 1063, 2013 U.S. App. LEXIS 24932.

Consol insists *Usery* controls the rebuttable standard under § 921(c)(4), and does not confine operators to the two methods listed in the statute. *Pet.* 12-14. But its argument overlooks the history of this presumption, and the Congressional amendments to the BLBA occurring just after the Supreme Court's decision. "To aid the miner in pursuing black lung benefits, Congress enacted the 1972 amendments to the [BLBA], which, among other things, created the [15 year] presumption found in 30 U.S.C. § 921(c)(4)."[7] *Petry v. Califano*, 577 F.2d 860, 863 (4th

---

[7] "One of the purposes of the 1972 amendment was to – 'Relax the often insurmountable burden of proving eligibility by prohibiting (continued...)

Cir. 1978). *See also* 30 U.S.C. § 921(c)(4)(1972). These amendments would be contested in *Usery*, where "Operators challenged the limitation on rebuttal evidence contained in [§921(c)(4)]" because the operators believed that the two methods of rebuttal "erect[ed] an impermissible irrebuttable presumption." *Usery*, 428 U.S. 35. As noted by Judge Niemeyer in his concurring opinion in *Owens*, the operators argued that rebuttal was impermissibly limited because:

> it might be medically demonstrable in an individual case that the miner's pneumoconiosis was mild and did not cause the disability <u>that the disability was wholly product of other disease, such as tuberculosis or emphysema</u>. Disability due to these diseases, as the Operators note, is not otherwise compensable under the [BLBA].

*Id.* at 34-45(emphasis added). *See also Owens*, 724 F.3d 561 (Niemeyer, J., concurring). The Supreme Court would find that the BLBA "does not itself limit the evidence with which an operator may rebut the § [921(c)(4)] presumption." *Id.* at 36-37. At no point did the Supreme Court announce that rebuttal is established by showing a miner's pneumoconiosis did not "substantially contribute to his total disability." *Pet.* 14.

The Supreme Court's decision in *Usery* concerning the rebuttal methods under § 921(c)(4) must be viewed in light of

---

a denial of claims based solely on a negative chest roentgenogram and by presuming that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis." *Ansel v. Weinberger*, 529 F.2d 304, 306 (6th Cir. 1976) *quoting* Sen. Rep. No. 92-743 (1972) 92nd Cong. 2d. Sess., 2 U.S.Cong. & Admin.News'72 at 2306.

the definition of pneumoconiosis at that time. Coal workers' pneumoconiosis in 1976 was "a chronic dust disease of the lung arising out of coal mine employment in a coal miner." 30 U.S.C. §902(b)(1976). The definition covered diagnoses made by x-ray, or through pathology evidence. *Usery*, 428 U.S. 7. Congress amended this definition in 1977 to: "a chronic dust disease of the lung and its sequelae, <u>including respiratory and pulmonary impairments</u>, arising out of coal mine employment."[8] 30 U.S.C. § 902(b)(1978)(emphasis added). The regulations currently define pneumoconiosis as two distinct diseases: clinical pneumoconiosis, and legal pneumoconiosis. 20 C.F.R. § 718.201. "Legal pneumoconiosis refers to all lung diseases which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Hobbs v. Clinchfield Coal Co.*, 917 F.2d 790, 791 n. 1 (4th Cir. 1990). "The legal definition of 'pneumoconiosis' is incorporated into every instance the word is used in the statute and regulations. *See* 30 U.S.C. § 902 (definition applies "[f]or purposes of this subchapter"); 20 C.F.R. 718.201 (definition applies "[f]or the

---

[8] "The Congressional intent behind the 1977 reform legislation was the same as that underlying the 1972 amendments: to expand the coverage contemplated by the original act and to liberalize claim awards by removing certain eligibility restrictions from the program." *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 220 (7th Cir. 1982).

purpose of the Act")." *Barber v. Director, OWCP, U.S. Dept. of Labor*, 43 F.3d 899, 901 (4th Cir. 1995).

Consol's belief that *Usery* still controls the methods of rebuttal overlooks the fact that the only compensable form of pneumoconiosis in 1976 was clinical coal workers' pneumoconiosis. This narrow definition formed the basis for the operators' challenge to limitations of rebuttal under § 921(c)(4) in *Usery*, and served as the basis for the Supreme Court's decision not to confine operators to the two methods of rebuttal in the statute. Take for example: a miner afforded the 15-year presumption who suffers from clinical pneumoconiosis causing no discernible impairment. Instead, coal dust induced emphysema is the sole cause of the miner's impairment. Prior to *Usery* this miner would be found entitled to benefits under the 15-year presumption, even though emphysema did not fit the statutory definition of compensable pneumoconiosis. *Usery*, 428 U.S. 7. It is for this reason *Usery* permitted a third method of rebuttal for operators to show the miner's impairment "was wholly product of other disease," other than the compensable form of pneumoconiosis. The subsequent amendments to the BLBA have eliminated this third method of rebuttal because a respiratory impairment caused by emphysema due to coal dust exposure is legal pneumoconiosis. 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a)(2). The third method of rebuttal created by *Usery*,

24

is now encapsulated into the two methods of rebuttal at §
921(c)(4).

Consol also presses that operators should be able to rebut
the 15-year presumption "by a third method of showing the
claimant's pneumoconiosis did not substantially contribute to
his total disability." *Pet*. 14 *citing to Owens*, 724 F.3d 550,
554-55, and 560(Niemeyer, J., concurring).   Outside of the
concurring opinion by Judge Niemeyer in *Owens*,[9] Consol never
addresses how it arrived at this third method of rebuttal.

Judge Niemeyer is correct the *Usery* Court found "the
rebuttal methods of § 921(c)(4) were <u>limiting</u>." *Id*. at
561.(Niemeyer, J. concurring).   Citing to the decision in *Usery*,
Judge Niemeyer noted, "the coal mine operator's involved in
*Usery* made the same argument that Mingo Logan makes here." *Id*.
The language cited by the Judge from *Usery* does not support
rebuttal by demonstrating a miner's pneumoconiosis did not
substantially contribute to the miner's impairment. *Usery*, 428
U.S. at 34-35.   Instead, the *Usery* Court permitted operators to
show "the miner's pneumoconiosis was mild and did not cause the
disability -- that the disability <u>was wholly a product of other
disease</u>, such as tuberculosis of emphysema." *Id*.   This language
ensured operators could rebut the presumption by completely

---

[9] The majority in *Owens* never addressed whether holding operators to the two
methods of rebuttal at § 921(c)(4) impermissibly restricts their ability to
rebut the presumption. *Owens*, 724 F.3d at 556.

eliminating pneumoconiosis as a cause of the miner's disability, and does not support rebuttal by a substantially contributing cause standard.

The substantially contributing cause standard also conflicts with the amendments to 20 C.F.R. § 718.305(d), which occurred after this Court's decision in *Owens*. This regulation provides for rebuttal by showing a miner does not suffer from clinical and legal pneumoconiosis, or establishing "that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in § 718.201." 20 C.F.R. § 718.305(d)(2013). This Court applied the same standard of rebuttal when addressing prior version of 20 C.F.R. § 718.305 in *Rose v. Clinchfield Coal Co.*, 614 F.2d 936 (4th Cir. 1980).[10] There this Court found an operator failed to meet its burden of rebuttal by failing to "rule out" the connection between the miner's pneumoconiosis and his cancer. *Id.* at 939. *See also Colley & Colley Coal Co. v. Breeding*, 59 Fed.Appx. 563, 567 (4th Cir. 2003). "The creation of certain presumptions favoring claimants and the corresponding imposition of certain burdens on those opposing claims under the Act reflect the purpose of the statute." *Id. referencing* 30 U.S.C. §901.

---

[10] When considering the standard of rebuttal under 20 C.F.R. § 727.203(2000), this Court found "the employer must *rule out* the causal relationship between the miner's total disability and his coal mine employment in order to rebut the interim presumption." *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir. 1984).

The Sixth Circuit has agreed operators are bound to the two methods of rebuttal found at § 921(c)(4). *Ogle*, 2013 U.S. App. LEXIS 24932.  The Court explained the third method of rebuttal provided by *Usery* no longer exists, but is "merely a specific way to attack the second link in the causal chain – that pneumoconiosis caused total disability." *Id.* *14.  "Where the burden is on the employer to disprove a presumption, the employer must 'rule-out' coal mine employment as a cause of the disability." *Id.* *18.

The 1977 amendments to the definition of pneumoconiosis eliminated the third method of rebuttal envisioned by the *Usery* Court.  Operators are now bound to the two statutory methods of rebuttal found at § 921(c)(4).  Amended 20 C.F.R. § 718.305 properly accounts for these amendments, and is virtually identical to the prior version of this regulation promulgated in 1980. *Compare* 20 C.F.R. § 718.305(2012) *with* 20 C.F.R. § 718.305(2013). The ALJ applied the correct legal standard, and did not restrict Consol's ability to rebut the 15-year presumption. *J.A.* 40-45.

B. The Director's regulation addressing the methods of rebuttal under Section 921(c)(4) is entitled to *Chevron* deference.

The Director's amended regulation addressing the methods of rebuttal under § 921(c)(4) is entitled to deference as it is consistent with the plain language of the statute, and the prior

27

version of the regulation implementing this statute. *Chevron,*
467 U.S. 837.    Consol contends this amended regulation is
invalid, along with its prior version. *Pet.* 16-19.  According to
Consol, the Director has overruled the holding in *Usery* where
the Supreme Court "unambiguously" concluded that the rebuttal
methods at § 921(c)(4) do not apply to operators. *Id.* 18.
Consol says *Usery* still controls and, by promulgating a
regulation which limits operators to the rebuttal methods at §
921(c)(4), the Director has impermissively reinterpreted §
921(c)(4). *Id.* 16-19 *citing United States v. Home Concrete &
Supply, LLC*, 132 S.Ct. 1836 (2012) *and Nat'l Cable and
Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967
(2005).   Consol's argument fails because the Director has not
reinterpreted § 921(c)(4), but instead properly considered the
methods of rebuttal available to operators in light of the
Congressional amendments that followed *Usery.*

The Supreme Court has "long recognized that considerable
weight should be accorded to an executive department's
construction of a statutory scheme it is entrusted to
administer." *Chevron*, 467 U.S. at 844.    The Director's
interpretation of the BLBA and its implementing regulations is
entitled substantial deference. *Doss*, 53 F.3d at 658 (4th Cir.
1995).    As argued above, the Director's amended regulation
addressing the methods of rebuttal under § 921(c)(4) is

consistent with the statutory language, and the 1977 amendments
to the BLBA.   The amended regulations are consistent with the
prior version of that same regulation, which required operators
to show the miner does not have pneumoconiosis, "or that his
respiratory or pulmonary impairment did not arise out of, or in
connection with, employment in a coal mine." 20 C.F.R. §
718.305(a)(2012).    Finally, the Director's regulation is
consistent with the Congressional intent behind the 1972 and
1977 amendments to the BLBA to expand entitlement to miners.

Relying on *Home Concrete and Brand X*, Consol argues the DOL
has impermissibly reinterpreted § 921(c)(4) "in a way directly
contrary to the Supreme Court's interpretation." *Pet.* 18.   As
explained by the Director, these cases do not "forbid an agency
from adopting a regulation that conflicts with a prior judicial
decision when the new regulation is compelled by a subsequent
amendment to the statute." 78 FR 59102, at 59106.    Consol's
argument stands for the remarkable position that the Director
should have ignored the amended definition of pneumoconiosis
when promulgating its regulations.   The Supreme Court's decision
in *Usery* did not foreclose consideration of the methods of
rebuttal under § 921(c)(4), but instead addressed these methods
based on the definition of pneumoconiosis at the time.    The
Director's regulation does not overrule *Usery*, and this Court

should afford *Chevron* deference to the Director's interpretation of the methods of rebuttal available under § 921(c)(4).

### III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT CONSOL FAILED TO REBUT THE 15-YEAR PRESUMPTION.

The ALJ awarded Atwell benefits based on a determination that the medical opinions of Drs. Hippensteel and Rosenberg failed to rebut the presumption coal dust exposure caused Atwell's disabling impairment. *J.A.* 40-45. Consol challenges the ALJ's analysis providing a lengthy challenge to the ALJ's weighing of the medical opinion evidence. *Pet.* 21-55. First, Consol challenges the ALJ's weighing of Dr. Hippensteel's opinion claiming the ALJ mischaracterized the physician's opinion concerning the cause of Atwell's obstructive impairment and chronic bronchitis. *Id.* 21-32. Second, Consol tests the weighing of Dr. Rosenberg's opinion because it believes the physician's opinion addressing the cause of Atwell's obstructive impairment does not contradict the preamble. *Id.* 32-44. Third, Consol offers a red herring argument concerning the ALJ's weighing of the opinions of Drs. Habre and Al-Khasawneh who both found coal dust exposure to be a cause of Atwell's impairment. Through these three lengthy arguments, Consol seeks this Court to completely reweigh virtually all the medical evidence of record, and substitute its inferences for that of the ALJ. These arguments should be rejected because substantial evidence supports the ALJ's conclusions.

It is Consol's burden to rebut the presumption that coal dust exposure caused Atwell's disabling impairment. Rebuttal "is accomplished only by strongly persuasive evidence demonstrating the falsity of a presumed fact." *Dayton v. Consolidation Coal Co.*, 953 F.2d 637 (4th Cir. 1992). This Court reviews Consol's challenge to the ALJ's weighing of the evidence to determine whether substantial evidence supports the ALJ's conclusions. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). "[I]t is the province of the ALJ to make credibility determinations and to resolve inconsistencies or conflicts in the evidence." *Yogi Mining Co. v. Fife*, 159 Fed.Appx. 441, 448 (4th Cir. 2005). "Moreover, as tried of fact, the ALJ is not bound to accept the opinion or theory of any medical expert. He must evaluate the evidence, weigh it, and draw his own conclusions." *Underwood v. Elkay Mining*, 105 F.3d 946, 949 (4th Cir. 1997).

A. Dr. Hippensteel's opinion is poorly reasoned, and contrary to the regulatory definition of pneumoconiosis.

Dr. Hippensteel's opinion concerning the cause of Atwell's chronic bronchitis conflicts with the regulatory definition of pneumoconiosis, and the remainder of his opinion fails to

32

explain why coal dust did not cause the non-reversible portion of Atwell's obstructive impairment. *J.A.* 41-43. Consol says the ALJ and the Board simply misunderstood the physician's opinions, and erred by finding his conclusions contrary to the regulations and insufficiently reasoned. *Pet.* 21-32. Consol argues the ALJ erred by rejecting Dr. Hippensteel's opinion on the issue of legal pneumoconiosis since the physician never said chronic bronchitis caused by coal dust exposure is never latent or progressive. *Id.* 29-32. Consol further disputes the ALJ's determination that Dr. Hippensteel did not address the non-reversible portion of Atwell's obstructive impairment by attempting to cure the physician's opinion with its own explanation. Both of Consol's arguments fail.

Judge Lesniak rejected Dr. Hippensteel's opinion concerning the issue of legal pneumoconiosis because it is "inconsistent with the plain language of the Regulations, which recognizes pneumoconiosis as being a latent and progressive disease." *J.A.* 43-44 *referencing Greene v. King James Coal Mine Inc.*, 575 F.3d 628 (6th Cir. 2009) *and Midland Coal Co. v. Director, OWCP[Shores]*, 358 F.3d 486 (7th Cir. 2004). Dr. Hippensteel diagnosed Atwell with chronic bronchitis due primarily to smoking. *J.A.* 120. The physician excluded coal dust as a cause because he felt Atwell's condition:

33

> is not suggestive of industrial bronchitis since
> industrial bronchitis from coal mine dust exposure
> <u>usually subsides within a period of several months</u>
> <u>after leaving work in the mines and this man stopped</u>
> <u>working in 2000.</u>

*Id.*(emphasis added). The physician repeated this opinion in his final written opinion diagnosing Atwell with "chronic bronchitis that is not compatible with industrial bronchitis from his distant coal mine dust exposure." *J.A.* 224. Applying this theory reveals that, if coal dust exposure caused Atwell to suffer from chronic bronchitis, it would have subsided within months of his last shift on August 5, 2000. *See J.A.* 24.

Dr. Hippensteel's opinion unquestionably conflicts with the regulatory definition of pneumoconiosis. Legal pneumoconiosis is a broad definition, which includes chronic bronchitis triggered by coal dust exposure. *Dante Coal Co.*, 164 Fed. Appx. 338, 341 n.2 (4th Cir. 2006). The Department of Labor has found "[e]ven in the absence of smoking, coal mine dust exposure is clearly associated with clinically significant airways obstruction and chronic bronchitis." 65 Fed. Reg. at 79,940 (Dec. 20, 2000). As referenced by the ALJ: "[w]hether pneumoconiosis (including the condition described for these purposes as 'legal' pneumoconiosis) is a disease that can be latent and progressive is a scientific question. The Department of Labor's regulation reflects the agency's conclusion on that point." *Midland Coal Co.*, 358 F.3d at 490. *See also J.A.* 44.

34

Coal workers' pneumoconiosis "is recognized as a latent and progressive disease which may only first become detectable after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c). *See also Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 151 (1987).

It is proper for an ALJ to afford "little weight . . . to medical findings that conflict with the BLBA's implementing regulations." *Lewis Coal Co. v. Director, OWCP*, 373 F.3d 570, 580 (4th Cir. 2004). Contrary to Consol's position, the ALJ did not ignore the "subtleties" of Dr. Hippensteel's opinion concerning the latent and progressive nature of pneumoconiosis. *Pet.* 30. Rather, the ALJ rejected the physician's opinion because it is based on an equivocal position in direct conflict with the regulatory definition of pneumoconiosis. *J.A.* 43–44. Indeed Dr. Hippensteel offered no basis for eliminating a diagnosis of legal pneumoconiosis except to say that chronic bronchitis caused by coal dust exposure "usually subsides within a period of several months" after exposure to coal dust ceases. At no point did the physician identify how he determined that Atwell's bronchitis fits into what he considers the usual pattern for smoking. Substantial evidence supports the ALJ's decision to reject Dr. Hippensteel's opinion on the issue of legal pneumoconiosis.

35

Next, Consol contests the ALJ's decision to afford reduced weight to Dr. Hippensteel's opinion for failing to address the non-reversible portion of Atwell's obstructive impairment. *Pet.* 21-28. To support this argument, Consol provides a partisan summary of the physician's opinions in an effort to relitigate this issue. *Id.* 23-28. Consol then argues the ALJ erred because Dr. Hippensteel's discussion of the reversibility in his final opinion is merely a discussion of the testing by Dr. Al-Khasawneh, and does not alter the physician's prior conclusions. *Id.* 24-26. Consol's argument fails because it never shows how substantial evidence does not support the ALJ's determination that Dr. Hippensteel offered no true explanation for why coal dust exposure did not cause the non-reversible portion of Atwell's obstructive impairment.

Judge Lesniak correctly found Dr. Hippensteel's opinion does "not explain whether [Atwell's] residual impairment was still totally disabling or why coal dust exposure would not be a contributing cause of the irreversible component of the impairment." *J.A.* 41 *referencing Consolidation Coal Co. v. Swiger,* 98 Fed.Appx. 227 (4th Cir. 2004). Despite the fact that Dr. Hippensteel raised this issue, his prior opinions fail to address the "presence or significance of any reversibility, even when directly asked during his deposition" about the results of Atwell's pulmonary function testing. *Id.*

36

The primary reason Dr. Hippensteel excluded coal dust as a cause of Atwell's disabling impairment is his flawed belief that coal dust exposure does not cause a permanent condition of bronchitis. *J.A.* 120-121. He would also note that Atwell's testing shows he suffers from "a purely obstructive impairment, without any restrictive impairment from interstitial fibrosis." *J.A.* 175. Dr. Hippensteel conceded coal dust can cause purely obstructive impairments, but he felt it is more common for coal dust to cause a mixed restrictive and obstructive impairment. *J.A.* 160-61. Dr. Hippensteel rendered the following conclusion in his final opinion:

> [Atwell] has evidence of chronic bronchitis that is not compatible with industrial bronchitis from his distant coal mine dust exposure. He does not have any restrictive disease or diffusion impairment referable to interstitial fibrosis from his prior coal mine dust exposure. His partially reversible obstructive lung disease is not compatible with the fixed and irreversible obstruction expected from coal mine dust exposure but is compatible with chronic bronchitis as a disease of the general public.

*J.A.* 224.

As support for its request for this Court to reweigh the opinions of Dr. Hippensteel, Consol claims the reason Dr. Hippensteel did not discuss the reversibility in Atwell's function prior to his final opinion is because Dr. Al-Khasawneh's testing "was the first time [Atwell] demonstrated clinically significant reversibility." *Pet.* 24. "There was no

reversibility in this claim to be discussed at the time [of] his deposition." *Pet.* 28.    But this is Consol's opinion of the evidence, and not the opinion of Dr. Hippensteel who testified in 2010 that Atwell took "[b]ronchodilator medications that would help with clearly secretions and reversibility of function related to his breathing symptoms." *J.A.* 149.    The ALJ is correct that Dr. Hippensteel never addressed the significance of the reversibility in Atwell's function until his final opinion. *J.A.* 41.

Consol claims Dr. Hippensteel's discussion of reversibility in his final opinion is limited solely to the testing by Dr. Al-Kahsawneh and does not detract from his prior opinions. *Pet.* 25-28.    The physician clearly stated in his February 11, 2011 opinion that he "reviewed additional medical evidence" along with his prior opinions, and his "conclusions [are] based upon the evidence as a whole in this case." *J.A.* 222.    Having reviewed additional medical records and his prior opinions, the physician concluded that Atwell's "partially reversible lung disease is not compatible with the fixed and irreversible obstruction expected from coal mine dust. . . ." *J.A.* 224. Consol's attempt to recharacterize Dr. Hippensteel's opinion completely fails.  .

Substantial evidence supports the ALJ's analysis of Dr. Hippensteel's opinions as "[a]n ALJ has discretion to disregard

an opinion unsupported by a sufficient rationale." *Milburn Colliery Co.*, 138 F.3d 532 n.9 (4th Cir. 1998). Judge Lesniak accurately found Atwell to suffer from a totally disabling obstructive impairment even after the administration of bronchodilators. *J.A.* 39. It is then Consol's burden to show coal dust exposure did not cause or contribute to Atwell's impairment. The medical opinion of Dr. Hippensteel falls short.

B. Dr. Rosenberg's explanation for the cause of Atwell's obstructive impairment conflicts with the Department of Labor's findings in the preamble.

The cornerstone of Dr. Rosenberg's opinion is a belief concerning the pattern of impairment caused by coal dust, which conflicts with the Department of Labor's findings in the preamble. *J.A.* 44-45. Consol argues the ALJ erred in weighing Dr. Rosenberg's opinion on the issue of legal pneumoconiosis, and improperly rejected the physician's disability causation opinion. *Pet.* 33-44. Consol believes the ALJ improperly substituted his opinion for that of Dr. Rosenberg in finding the physician's opinion contrary to the Department of Labor's findings in the Preamble. *Id.* 33-39. Consol contends the ALJ also erred in rejecting the physician's disability causation opinion because the physician improperly found that Atwell does not suffer from legal pneumoconiosis. *Id.* 40-44. These arguments fail because Dr. Rosenberg's opinion does conflict with the Department of Labor's determination that miners exposed

to coal dust are at an increased risk for suffering impairments in function manifested by reductions in the FEV1/FVC ratio.

When evaluating Dr. Rosenberg's opinion, Judge Lesniak properly found it is Consol's burden of showing "by a preponderance of the evidence that [Atwell] does not suffer from clinical or legal pneumoconiosis." *J.A.* 44. Dr. Rosenberg found Atwell suffers from functional loss manifested by reductions in his FEV1/FVC ratio. *Id.* The physician believes this pattern of impairment is inconsistent with an impairment caused by coal dust exposure, which generally causes functional loss with a preserved FEV1/FVC ratio. *Id.* The ALJ rejected Dr. Rosenberg's opinion as "inconsistent with the preamble to the Regulations, which recognizes 'that coal dust can cause clinically significant obstructive disease in the absence of clinical pneumoconiosis, as shown by a reduced FEV1/FVC ratio." *Id. quoting Taylor v. Manalapan Mining Co.*, BRB No. 10-0403 BLA, 2011 WL 1451817 (Ben. Rev. Bd. Mar. 11, 2011)(unpub.) *referencing* 65 Fed.Reg. 79,943 (Dec. 20, 2000).[11]

It is without question that COPD "is encompassed within the definition of pneumoconiosis for purposes of entitlement to

---

[11] The Benefits Review Board has consistently upheld an ALJ's decision to afford reduced weight to the opinion Dr. Rosenberg expressed in this case as contrary to the preamble. *See e.g. Barker v. Cumberland Resources Corp.*, BRB No. 11-0406 BLA, 2012 WL 1391712 (DOL Ben. Rev. Bd. Mar. 8, 2012)(unpub); *Miller v. McCoy Caney Coal Co.*, BRB No. 12-0391 BLA, 2013 WL 1400890 (DOL Ben. Rev. Bd. Mar. 28, 2013)(unpub.); *Pennington v. Evans Coal Corp.*, BRB No. 12-0497 BLA, 2013 WL 4407007 (DOL Ben. Rev. Bd. July 17, 2013)(unpub.); *M.A. v. Jones Fork Operation*, BRB No. 08-0308 BLA, 2009 WL 346633 (DOL Ben. Rev. Bd. Jan 16, 2009)(unpub.).

Black Lung benefits." *Warth v. S. Ohio Coal Co.*, 60 F.3d 173, 175 (4th Cir. 1995). When promulgating the 2000 regulations, the Department of Labor reviewed the available medical literature and found exposure to coal mine dust places miners at increased risk of "decrements in certain measures of lung function, <u>especially FEV1 and the ratio of FEV1/FVC</u>." 65 Fed. Reg. 79,943 (Dec. 20, 2000) *quoting Criteria for a Recommended Standard, Occupational Exposure to Respirable Coal Mine Dust*, §4.2.3.2(1995)(emphasis added). It is therefore no surprise that the regulations allow miners to establish a compensable respiratory disability through demonstration of a reduced FEV1/FVC ratio (less than 55%). 20 C.F.R. § 718.204(b)(2)(i)(C).

Dr. Rosenberg indicated his agreement "with the D.O.L. that COPD may be detected by a decrease in the FEV1 and FEV1/FVC ratio, [but] this does not <u>generally</u> apply to patients with legal CWP." *J.A.* 140(emphasis added). Instead, Dr. Rosenberg claims the "studies accepted by the D.O.L." show obstruction caused by coal dust "is characterized by a preservation of the FEV1/FVC ratio." *Id.* On the other hand, obstruction caused by smoking cigarettes "is characterized by a reduction of the FEV1/FVC ratio." *Id.* The physician found Atwell's FEV1/FVC ratio to be "markedly reduced", and consistent with functional loss of smoking. *J.A.* 141. Dr. Rosenberg relied on this same

41

theory in his deposition, and subsequent medical opinion. *J.A.* 201-03, 230-31.

Consol does not dispute that an ALJ may consult the Department of Labor's findings in the preamble when weighing the conflicting evidence of record. *Harman Mining Co. v. Director, OWCP[Looney]*, 678 F.3d 305, 314-15 (4th Cir. 2012). Instead, it argues the ALJ erred in weighing Dr. Rosenberg's opinion because the physician never specifically said: "a reduction in the FEV1/FVC ratio can never be caused by coal mine dust." *Id.* 35. Consol attempts to further bolster its position stating: "the preamble and amended regulations do not suggest that all opinions finding COPD due to something other than coal dust exposure are antithetical to the Act." *Pet.* 36 *referencing Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 863 (DC Cir. 2002). Consol's argument fails for two reasons.

First, Consol is correct – not all miners with COPD suffer from legal pneumoconiosis. But this general fact adds nothing to Consol's argument on this appeal. Atwell is afforded the rebuttable presumption that his COPD is in fact legal pneumoconiosis. Therefore, Consol must show how Dr. Rosenberg's opinion rebutted this presumption, and is not contrary to the findings in the preamble. A review of Dr. Rosenberg's opinion shows the physician repeatedly relied on his belief that the

42

pattern of Atwell's impairment is not consistent with the pattern caused by coal dust.

Second, if Dr. Rosenberg believes it would be rare for coal dust exposure to cause a reduction in the FEV1/FVC ratio he never explains "why [Atwell] could not be one of these 'rare' cases." *Consolidation Coal Co. v. Director, OWCP[Beeler]*, 521 F.3d 723, 726 (7th Cir., 2008). Consol does not deny that a physician who claims coal dust exposure causes functional loss with a preservation of the FEV1/FVC ratio runs contrary to the findings in the preamble. Instead, Consol attempts to save Dr. Rosenberg's opinion by claiming the physician did not deny coal dust exposure could cause a reduced FEV1/FVC ratio as found in Atwell. This argument fails because Dr. Rosenberg's opinions make it clear that he never considered this possibility. Instead, he repeatedly relied on his flawed belief that Atwell's reduced FEV1/FVC ratio is a "pattern of obstruction [] not consistent with one related to past coal mine dust exposure." *J.A.* 230. *See also J.A.* 140-41, 201-02. Dr. Rosenberg's opinion is also silent as to whether coal dust exposure could have contributed, or caused Atwell's impairment. Judge Lesniak properly characterized Dr. Rosenberg's findings, and did not err in rejecting his conclusion as being contrary to the findings in the preamble.

43

Having found Dr. Rosenberg's opinion on legal pneumoconiosis as being "inconsistent with the Regulations and the preamble", Judge Lesniak would "give little weight to his opinion that pneumoconiosis played no part in causing the miner's disability." *J.A.* 41 *referencing Adams v. Director, OWCP*, 886 F.2d 818 (6th Cir. 1989) *and Toler v. Eastern Associated Coal Co.*, 43 F.3d 109 (4th Cir. 1995). Consol argues "[t]he ALJ's use of the <u>Toler</u>/<u>Adams</u> framework is improper as it impermissibly equates a legal presumption with an affirmative factual finding." *Pet.* 41.

This Court held in *Toler*:

> At the very least, an ALJ who has found <u>(or assumed arguendo)</u> that a claimant suffers from pneumoconiosis and has a total pulmonary disability may not credit that the former did not cause the latter unless the ALJ can and does identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon her disagreement with the ALJ's finding as to either or both of the predicates in the causal chain.

43 F.3d at 116 (emphasis added). The core issue presented to the ALJ was whether Consol rebutted the presumption that coal dust caused Atwell's disabling obstructive impairment. *See J.A.* 38-44. The judge rejected Dr. Rosenberg's opinion on legal pneumoconiosis because the physician's opinion conflicted with the findings in the preamble. *J.A.* 44. Consol contends the ALJ's analysis is "illogical and inequitable," but it would be counterintuitive for the ALJ not to consider this analysis when

considering rebuttal under disability causation. *Pet.* at 42.   In this specific case, Dr. Rosenberg's opinion on legal pneumoconiosis and disability causation are one in the same. The ALJ's analysis of Dr. Rosenberg's disability causation opinion flowed directly from his discrediting of the physician's opinion on legal pneumoconiosis.   Substantial evidence supports the ALJ's determination that Dr. Rosenberg's opinion fails to rebut the 15-year presumption.

C. The ALJ's weighing of the medical opinions of Drs. Habre and Al-Kahsawneh does not assist Consol in rebutting the 15-year presumption.

Leaving no stone unturned, Consol also argues the ALJ erred in affording probative weight to the medical opinions expressed by Drs. Habre and Al-Khasawneh. *Pet.* 45-55.   Consol argues the ALJ failed to consider the "nature of the physician-patient relationship" when weighing Dr. Habre's opinions, and erred in accepting Dr. Habre's "bald conclusion" that Atwell suffers from legal pneumoconiosis. *Id.* 48-51.   Consol also believes the ALJ erred in accepting Dr. Al-Khasawneh's opinions because the physician failed to provide sufficient explanation for his conclusions. *Id.* 53-55.   Consol's challenge to these physicians' opinions is merely a red herring, as both physicians offered opinions that do not support rebuttal of the 15-year presumption.

Consol does not dispute Drs. Al-Khasawneh and Habre both offered opinions supporting Atwell's entitlement to benefits. After conducting a comprehensive pulmonary evaluation, Dr. Al-Khasawneh diagnosed Atwell with legal pneumoconiosis in the form of an obstructive impairment significantly caused and aggravated by coal dust exposure. *J.A.* 176-78. Dr. Habre, who provides personal treatment for Atwell, diagnosed the miner with "smoke induced lung disease and coal induced lung disease." *J.A.* 168.

Consol goes to great lengths to discredit the opinions of Drs. Habre and Al-Khasawneh, but completely overlooks its burden to prove coal dust exposure did not cause or contribute to Atwell's disabling impairment. As argued throughout, Judge Lesniak applied the correct legal standard, and substantial evidence supports his decision to reject the medical opinions of Drs. Rosenberg and Hippensteel. Accordingly, this Court should reject Consol's request for this Court to reweigh the evidence.

## <u>CONCLUSION</u>

Based on the foregoing, Ora Atwell, respectfully requests this Court affirm the ALJ's determination that he is entitled to an award of Federal black lung benefits.

Respectfully submitted,

ORA ATWELL

By Counsel

WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS
470 Park Avenue
Norton, Virginia 24273
(276) 679-0777
(276) 679-5919 (fax)

By: <u>_/s/ Joseph E. Wolfe</u>
Joseph E. Wolfe
VA State Bar No. 15316
And
By: <u> /s/ Ryan C. Gilligan</u>
Ryan C. Gilligan
VA State Bar No. 76768

## REQUEST FOR ORAL ARGUMENT

Respondent, Ora Atwell, does request the Court to hear oral argument regarding this matter. This case presents a complicated legal issue, and oral argument would likely aid the Court's decision-making.

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. _____        Caption: _____

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

   [ ]    this brief contains _____ [*state the number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

   [ ]    this brief has been prepared in a proportionally spaced typeface using _____ _____ [*state name and version of word processing program*] in _____ _____ [*state font size and name of the type style*]; or

   [ ]    this brief has been prepared in a monospaced typeface using _____ _____ [*state name and version of word processing program*] with _____ _____ [*state number of characters per inch and name of type style*].

(s)_____

Attorney for _____

Dated: _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th of January, 2014 I filed, by certified mail, with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit, the requisite number of this Brief of the Respondent.    I also certify that I have mailed, postage prepaid, first-class a copy of this Response Brief of Ora Atwell to:

Ms. Kathy L. Snyder, Esq.
Ms. Amy Jo Holley, Esq.
JACKSON KELLY PLLC
P.O. Box 619
Morgantown, WV 26507

Mr. Gary Stearman, Esq.
U.S. Department of Labor
Office of the Solicitor
Black Lung Benefits Division
Suite N 2117, NDOL
200 Constitution Avenue N.W.
Washington, D.C. 20210

<u>/s/ Ryan C. Gilligan</u>
Ryan C. Gilligan